Case 319-20, Estate of Alan Bland v. Thomas Bland, Appellant by Timothy Cassidy v. University of St. Francis, Affiliated by Noah Menlo. Mr. Cassidy, you may proceed. Thank you, Justice O'Brien. May it please the Court, Counsel, I represent in this matter the appellant, Thomas Bland, who below filed his petition to have his ex-wife's April 3, 2017, will enforced as written, naming him as the sole beneficiary and executor of her estate. The will was made while Tom and Alan Bland were still married, but divorce proceedings were pending. The judgment of dissolution was entered after the will was made, and a motion to dismiss was filed relying on Section 487B of the Probate Act. And the trial court allowed the motion, and this matters before the court on the petition for enforcement of the April 3, 2017, will as written. The way we view it, Your Honors, is that this court is, we're asking this court to construe Section 487B of the Probate Act, which provides, in relevant part, dissolution of marriage revokes every legacy or interest given to the test player's former spouse in a will executed before the entry of a judgment of dissolution of marriage. And we pose the issue before this court as to whether Section 487B, providing for revocation of the will by subsequent divorce, is absolute, or, instead, whether Section 487B should be interpreted as providing for a presumption of revocation that is rebutted with clear and convincing evidence that the will was made in contemplation of divorce. We pose that issue knowing that that exception, rebuttable presumption exception, is not contained in Section 4-7B. Our position, however, is that 4-7B should be interpreted to provide for a rebuttable presumption if it is shown by clear and convincing evidence that the will was made in contemplation of divorce. The facts in this case are in the pleadings and are relatively simple for the purposes of, I believe, interpreting the statute. On September 7, 2016, Ellen Bland initiates divorce proceedings against her then-husband, Thomas Bland, by filing her petition for dissolution. On April 3, 2017, Ellen Bland makes her will, naming her husband as sole beneficiary and executor of the estate. A few weeks later, on April 21, 2017, Ellen Bland fires her attorneys in the divorce proceedings. The court allows them to withdraw, and she continues in the divorce proceedings pro se, unrepresented by any attorneys. On November 7, 2017, the judgment of dissolution of marriage was entered between Ellen Bland, the decedent, and Thomas Bland, without Ellen Bland appearing or anyone appearing on her behalf. A month later, on December 9, 2017, Ellen Bland dies. As I mentioned then, Thomas Bland is now her ex-husband, and the sole legatee and executor under the will brought the petition to the force. The April 3, 2017 will, and we're here today asking the court to construe Section 4-7B. And I would start with telling the court what it well knows, that the first rule of statutory construction requires the court to ascertain and give intent, or the effect of the intent of the legislator, and in so doing must consider the entire statute. So in construing 4-7B, we believe that the court should construe the entire statute, which includes Section 4-7A, which provides for the ways in which a testator can revoke their will. And briefly, under Section 4-7A, there are four methods that a will can be revoked by a testator. One, by burning, cancelling, tearing, or obliterating it by the testator, him or herself, or by some person in their present and at their direction of consent. Two, by execution of a later will, declaring revocation. Three, by a later will, to the extent it's inconsistent with the prior will. And four, execution of an instrument declaring revocation, which is signed and attested to. I bring this to the court's attention because these are all specific acts under Section 4-7A that the legislator has promulgated to show testator intent in revoking a will. And in this court construing Section 4-7B, therefore, we believe that testator intent must be looked at. We talk about the day... Is that really why the statute was changed, though, is because usually you were looking at, you know, in cases where there was a subsequent divorce, then they were looking at whether or not there was, you know, true intent. They wanted to sort of do away with it and say, usually when people get divorced, they don't want anything to do with one another. They wouldn't want to leave this, so we're going to create a bright-line rule with this change. That is usually, Your Honor, the case. This case is very... And I'm not suggesting that the law should be changed because this case is very fact-unique. It's factually, I believe, a question of first impression. It's probably factually a question of last impression, where a spouse would initiate divorce proceedings, execute the will while those proceedings are pending, then go through... And by the way, the facts are also at the time she executed the will, her attorney told her the effects of 4-7B, and she still wanted to proceed by naming Tom Bland as a sole beneficiary. As you know from reading the brief, we're relying on Inouye's State of Day case, the Illinois Supreme Court case, which interpreted the revocation by marriage statute, which is identical, it's since been repealed, but it's identical to the statute before this court on the revocation by divorce, with one exception. One deals with a change in marital status from single to marriage, interpreted by the day court. In this case, it deals with the change in marital status from married to divorced. Everything else is essentially the same. And in day, the Supreme Court held that the legislative purpose in enacting 4-7, both A and B, sections A and B, is to prevent the artificial and questionable revocation of a will. And day was confronted with the issue. The facts in day were the testator-deceited proposed marriage and became engaged. Two days later, he made his will while still engaged but not married and left his fiancée, his estate. Subsequent to making the will, in day they became married and then he died. So you have a subsequent marriage in day. And the court was presented with the issue of there, is the revocation by marriage statute absolute, or should there be a rebuttable presumption of revocation that could be, or rather a presumption of revocation that could be rebutted by clearly convincing evidence, a higher standard, of course, of preponderance of evidence, that day made his will a contemplation of marriage. And the Supreme Court held the latter. And in doing so, posed the following question. This is in day when interpreting the revocation by marriage statute. The General Assembly, did the General Assembly intend that a testator should be conclusively presumed to have revoked his will even though, one, he married shortly after his execution, two, the future wife was given a substantial portion of the testator's property, thereby, and three, it is made to appear by clearly convincing evidence that the will was in fact made a contemplation of marriage. And in holding that the revocation of marriage statute only provided for a rebuttable presumption that answered its own question that it posed, holding that the legislative purpose is to prevent artificial or questionable revocation of wills evidence by provisions of the statute on wills declaring that wills shall not be revoked except in one of the methods therein specified. And that's why I went through section 4-7A. That's what the Supreme Court's referred to. And it appears unreasonable to ascribe to the legislator an intention to declare that a revocation by marriage occurs even though it is evident that the testator, in fact, made the will a contemplation of marriage. While evidence to rebut the presumption should be clearly convincing, we can see nothing in the statute to require that such evidence must appear on the face of the will. And as I said, other than the statute itself and construing it as a whole, I only point to it head again and say it again because section 4-7A is going to intent of the testator. Therefore, in construing section 4-7B, in making a will, especially in the unique facts of this case, while divorce proceeding is pending and knowing the effects of section 4-7B still makes the will, which we maintain is clearly based on the allegation of the petition, shows that the will was made in contemplation of divorce. She fires her attorneys, doesn't appear at the hearing on the judgment of dissolution. The judgment of dissolution is entered. You don't see these kind of facts here. This is very, very unusual, I'll admit. But just because the facts are unique, I'm not saying that this Court should construe favorably section 4-7B. I think that the Court needs to follow the reasoning and holdings of the day court. You're not changing the language of the statute. You're meeting into it a presumption of revocation, but it can be rebutted with clear and convincing evidence that it was made in contemplation, in this case, of divorce. Because the Court needs to consider the intent of the testator. What does the testator want? Well, she could have made a new will. She could have made a new will. If everybody knew that that was the effect of the statute, the easy solution, she could have drafted a new will. Your Honor, she died within a month of the judgment of dissolution by overdose. I mean, there's other facts that I'm not going to bring into the record here because they're not in the record. If her death isn't relevant, she could have drafted another will. His attorney could have helped her get that done. As could the deceit in the day. She could have drafted another will after the marriage. The fact that she was counseled that, hey, you're in this pending divorce, and if this divorce gets final, this is going to revoke these provisions of the will by Operation Law. I mean, her knowing all of that could have, I mean, to me, a clear possibility. Maybe it was intentional. Maybe she said, you know, I'd really like to work things out. And if we do, look what you get. You don't. Your Honor, I agree with you. But that, what you say there goes to the factual question of trying the case in the event the statute is interpreted as allowing the revocable presumption. Those are all issues that would be tried factually in arguments made. We're here at the thrust. We're trying to get to that point, you know, by having the court construe Section 4-7B in a similar manner that the Supreme Court construed the revocation of marriage statute, which, again, I maintain is substantially similar except for change of marital status. Counselor, you have two minutes. I think we have a session. I'll have, unless the court has a few more questions. I don't have a question. Thank you.  Mr. Minow? May it please the Court. Counsel. Good afternoon. My name is Noah Minow, and I represent the University of St. Francis in this matter. The University's argument is very straightforward. Section 4-7B of the Probate Act, commonly referred to as the revocation by divorce statute, is a revocable presumption of marriage statute. Revoked Ellen's bequest to Thomas as a matter of law due to their divorce. Counsel for Thomas Bland read the statute. The statute has a second clause in Section 4-7B. After it talks about how a dissolution of marriage revokes every legacy, it goes on to say, and the will takes effect in the same manner as if the former spouse had died before the testator. There is no exception in the statute. That fact is apparently not in dispute. It is also undisputed that Ellen and Thomas were divorced prior to Ellen's death. Ellen's marital status on her date of death was divorce, which triggered the revocation by divorce statute, and the bequest to Thomas was revoked by operation of law. The will took effect as if Thomas had died before Ellen. As a result, Ellen's alma mater, the University of St. Francis, is the sole remaining beneficiary in Ellen's will. Well, isn't really this issue here, the opposing counsel cites Day as Supreme Court in 1955, reading into how would you construe it under ambiguous provision, a revocable presumption, right? Yes, Your Honor. Okay. Why is that not permissible here in the revocation by divorce statute? Well... And his argument is that if it's done at that end for marriage, why not at this end for divorce? Sure. Well, the answer to that, this Court already got to in the case of In re Estata Forrest. This Court analyzed that very issue. In that case, Donald Forrest and Catherine Desjardins were friends who began living together in 1978. Forrest executed a will naming Desjardins as his sole beneficiary. They were married in 1980 but divorced in 1984. However, the couple remained, and I quote, close friends until Forrest's death in 1986. After Forrest's death, Desjardins tried to enforce the will as written. However, this very Court affirmed the trial records holding that the revocation by divorce statute revoked every legacy to Desjardins as a result of the couple's divorce. The Court held that the current revocation by divorce statute, the statute we're talking about today, not the statute that was analyzed in Dey, plainly designates the status of the parties at the time of the testator's death as the triggering event of the revocation. This Court found the language of Section 4-7B to be plain and unambiguous, requiring no further construction. As a result, this Court refused to read any exception into the bright-line tests of the statute. As to do so, and I quote, would have required the Court to read language into the statute that the legislature did not choose to include. The language of the statute has not changed since Forrest. No exception exists. The test remains the marital status of the testator at the date of death. If the testator is divorced, any legacy to the prior spouse is revoked as a matter of law. Now, this Court looked at this issue prior to Forrest. They looked at this case, or this similar issue, in the case of In re State of Peekle. In that case, the testator executed a will in 1957, naming her husband as the sole primary beneficiary. They divorced four years later in 1961, but they apparently reconciled at some point thereafter and cohabitated together for 13 years until the testator's death. Since the testator's will expressed no contrary intent, this Court found that the petitioner's legacy to her husband was revoked as a matter of law. The circumstances of their relationship was not factored into the Court's analysis. The fact that they were divorced as of the testator's date of death revoked the ex-spouse's bequest or inheritance under the will as a matter of law. It did not matter that they remained friends as they did in Forrest or cohabitated as they did in Peekle. Now, In re State of Day does not apply to the matter at hand for several reasons. One, we talked about this a little bit, marriage and divorce are opposite by nature. But beyond that, if you look closely at the statute, the revocation by marriage statute that existed way back in 1955, the Eisenhower administration when the Supreme Court looked at this, the statute says, and I quote, marriage by the testator shall be deemed revocation of any existing will executed prior to marriage. Shall be deemed revocation. Fast forward to when the General Assembly amended the statute, changing it from marriage to divorce. The phrase shall be deemed revocation no longer exists. It just says, dissolution of marriage revokes every legacy. And then they added another phrase, my favorite phrase, the will takes effect in the same manner as if the spouse had died before the testator. It's very simple. It's binary. What was the status on date of death? If divorced, revoked. If married, will is enforced as written. And it's just that simple. Now, I could argue until I'm blue in the face about why day doesn't apply, but I don't think I could say it any better than this Court said enforced. I included a lengthy block quote in our brief, pages 15 and 16. This Court said, unlike the revocation by marriage statute the day court considered, the current revocation by divorce provision of the act plainly designates the party's status at the time of the testator's death as the triggering event. Consequently, we refuse to apply the analysis of day to the statutory provision at hand. The Court went on to note that no exceptions are in the statute, and the statute has not changed. The Court stated, and I quote, to adopt the ex-spouse's argument would be to read language into the statute that the legislature did not choose to include. We find the language of the statute is plain and unambiguous and requires no further construction. And again, the statute that was looked at in Forrest back in 1999 is the same statute that is at issue in this case. The existing third district precedent enforced in Peekle is not unlike the decisions of the Illinois Appellate Court and other districts. There is the case of Rusty v. First National Bank of Lake Forrest out of the second district. In that case, similar to this one, the deceased testator and his wife were divorced at the time of the testator's death. The second district held that pursuant to the revocation by divorce statute, the decedent's will, which named his then-wife as the beneficiary, would take effect as if she had pre-deceased him. Same analysis. There's another one, In Re, Shelton's Estate, out of the fourth district. The testator made a will, and there subsequently was a divorce. The fourth district held that the divorce under Section 4-7B revoked any interest the ex-spouse had under the will, and the will otherwise remained in effect. We're not revoking the entire will under Section 4-7A by obliterating, tearing. We're revoking bequests under 4-7B. It's a different analysis. Third one, In Re, Zinnerman's Estate. This is, again, out of the second district. The testator's divorce resulted in the revocation of his bequest to his ex-wife as if she had died before him, and the Court specifically noted there was an absence of the testator's clear expression of intention to the contrary in the will. We talk about executing another will as a way of potentially avoiding the effect of Section 4-7B. Well, if you read the Zinnerman case, apparently another way to avoid it would potentially be acknowledging the existence of 4-7B and the intent of the testator for that it not to apply to her will. We don't have that in this case. The last case I want to mention is In Re, Estate of Bierce, or Bier, excuse me. It's out of Missouri. Missouri has a revocation by divorce statute, which is substantially similar to Illinois'. And, in fact, the Missouri court looked at Ruski, and they looked at Shelton, and they looked at Zinnerman, and they held that the statute was plain and unambiguous and, therefore, had to be applied as a matter of law, as a right-line test. And that court also cited similar cases from Maryland, Michigan, New Jersey, New Mexico, Ohio, and Oregon. There's a uniform body of law out there when interpreting revocation by divorce statutes. Meanwhile, there is no law on the books that supports Thomas Bland's argument that an exception should or can be read into a plain and unambiguous statute that provides a right-line test. In conclusion, the issue has already been addressed by this Court in Forrest, as well as people, as well as other districts. The marital status of the testator at the time of the death is the triggering event for whether Section 4-7B applies. This Court has held that this statute is plain and unambiguous. The statute has not changed. There is no exception in the statute. The General Assembly did not provide one. And, therefore, because Ellen and Thomas were divorced as of the date of Ellen's death, her bequest to Thomas should be revoked as a matter of law. And the trial court's reliance on Forrest, as well as the other cases I cited here today, was proper. And if you have any questions, I'm happy to answer them. Otherwise, thank you for your time. Thank you, Mr. Menno. Mr. Cassidy for a follow-up. Thank you, Your Honor. I want to talk about this Court, the Third District Court's decision in Forrest. The issue in that case was not the issue of presumption of revocation by divorce that could be rebutted by showing a clear and convincing evidence of whether the will was made in contemplation of the divorce. That's the issue before this Court. That was the issue before Day. These other cases don't have these. This issue is unique before this Court. Here's what Forrest was that this Court decided. The testator and his partner cohabitated. They were single. While they were cohabiting, Forrest made his will. While they were single, they subsequently married after the will was made. They subsequently divorced. So the question presented to the Court in Forrest and was argued by the proponent of the will, the surviving girlfriend, surviving spouse, and the surviving ex-spouse, was not whether Forrest made the will in contemplation of a future marriage and then a future divorce, which is what we're asking this Court to do here. What was the testator's intent when the will was made? That wasn't the issue in Forrest. The issue was, wait a minute. We were cohabiting and single when the will was made. And at the date of death, after the divorce, we're single again. So you should look at what my status was at the time the will was made. Single. And the Court then was presented with one of two alternatives. The way I read Forrest is, what was the status at the time of death? Divorced. We're not going to look to the status at the time the will was made. Status, marital status, not intent of the testator. And the Court said at the tribunal that we have to look at the status at date of death, which is divorce. The Court never was asked to address the issue that we're asking be addressed, as was addressed in Day, is whether the Section 4-7B creates only a presumption of revocation that could be rebutted, as I discussed. One thing Day said, and we've been through it, but one thing that's very clear, and it held and found that the legislative purpose in enacting Section 4-7 was to prevent the artificial or questionable revocation of a will. And using Hennessey's springboard, interpreting the statute to accomplish legislative intent, it said there has to be a presumption of revocation that could be rebutted so as to prevent the artificial or questionable revocation of a will, which will happen here if 4-7B is read as absolute. And that's what Day did. That was what their reasoning was. It says we're still accomplishing the legislative intent there of the revocation by marriage statute, which there's no difference in these other than the marital status of the person. And they accomplished meeting the legislative purpose of Section 4-7, that included the marriage part, by saying, you know, we're still honoring the plain language of the statute. There is revocation. We're going to presume there's revocation. But you have to prove by clear and convincing evidence that that will was made in contemplation of marriage here and in contemplation of divorce. And there's another principle of statutory construction that I think is important here. And it's cited in my brief, I think the reply brief, which says when the intent of the legislator is otherwise clear, the court possesses the authority to read language into a statute which has been omitted by legislative oversight. I mean, I think with everything that I've said here and in looking at Day, you accomplish the legislative purpose of preventing the artificial or questionable revocation of wills by finding a presumption of revocation, but they can be revoted by clear and convincing evidence, which was not Forrest. Forrest was much different. It was simply measuring the marital status of a person, either at the time the will was made or at the time of death. And the court said it has to be the time of death. It never got into testator intent, which is what this case is all about and which is what Day was all about. So we would ask that the trial court be reversed and be remanded for consideration. Thank you, Your Honor. Any questions? Thank you, Mr. Caffey. Thank you both for your arguments here today. This matter will be taken under advisement and the written decision will be issued to you as soon as possible.